UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ZACHARY CARL ROTH**, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:19-cv-02179-TNM |
| **ISLAMIC REPUBLIC OF IRAN**, | |
| Defendant. | |

**<u>MEMORANDUM OPINION</u>**

Soldiers injured in Iraq and Afghanistan and their families sued Iran for financing terrorists who attacked them.  This Court granted their motion for default judgment in part.  *See Roth v. Islamic Republic of Iran*, No. 19-cv-2179, 2023 WL 196577 (D.D.C. Jan. 17, 2023).  Then, it appointed a special master to calculate damages.  *See* Order, ECF No. 108.  The Court now resolves Plaintiffs' damages requests.

**I.**

The Court has chronicled Iran's support for terrorism, the facts of the attacks here, and the soldiers' injuries elsewhere.  *See generally Roth*, 2023 WL 196577.  In sum, Iran provided training and material support to terrorist organizations that used various weapons—including explosively formed penetrators and improvised explosive devices—to attack the soldier Plaintiffs.  *See generally id.*  Plaintiffs proved that Iran was liable for all of their injuries under the Foreign Sovereign Immunities Act (FSIA) with one exception.  *See generally id.*

Now, there are 72 claimants for damages.  Thirty-one are soldiers who served in Iraq and Afghanistan.  Forty-one are their family members—one is a widow, two are parents, eight are spouses, and thirty are children.  After carefully reviewing the special master's report and

recommendation, *see* Attach. A, Special Master Suggested Findings of Fact & Conclusions of Law (Master Rep.) (Sealed), the Court adopts all facts found and most of the recommendations made.[1]

## II.

To obtain damages in this FSIA suit, Plaintiffs must show "that the consequences of [Iran's] acts were reasonably certain to occur" and they must "prove the amount of damages by a reasonable estimate." *Abedini v. Islamic Repub. of Iran*, 422 F. Supp. 3d 118, 136 (D.D.C. 2019). The Court has already found that Plaintiffs' physical injuries and emotional suffering were a foreseeable consequence of Iran's actions. *See Roth*, 2023 WL 196577, at *16–19, 21– 22. So the Court must now determine whether each Plaintiff's claim for damages is supported by a "reasonable estimate." *Abedini*, 422 F. Supp. 3d at 136.

Assessing damages for victims of terrorism "is an imperfect science," but "courts strive to maintain consistency of awards between plaintiffs in comparable situations." *Mark v. Islamic Repub. of Iran*, No. 20-cv-00651, 2022 WL 4103854, at *9 (D.D.C. Sept. 8, 2022). Following *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 299 (D.D.C. 2006), courts in this district have coalesced around standard recovery amounts for types of plaintiffs. *See, e.g.*, *Selig v. Islamic Repub. of Iran*, 573 F. Supp. 3d 40, 64 (D.D.C. 2021). While *Heiser* is a useful reference, it is not binding. *See id.* So courts often vary from its guidelines depending on the facts. *See, e.g.*, *id.* (collecting cases); *Mark*, 2022 WL 4103854, at *10–11 (analyzing variances from the *Heiser* framework).

---

[1] Plaintiffs ask the Court to adopt the master's report in full because no one objected to it within 21 days. *See* Pls.' Mot. to Approve Damages, ECF No. 114; *see also* Fed. R. Civ. P. 53(f)(2). The Court thanks Special Master Murphy for his diligent and thoughtful work on this matter.

The relevant standards for damages are as follows.  Courts typically award $5 million for pain and suffering from substantial injuries.  *See, e.g.*, *Cohen v. Islamic Repub. of Iran*, 268 F. Supp. 3d 19, 24 (D.D.C. 2017).  Substantial injuries include compound fractures, severe flesh wounds, and lasting and severe psychological pain.  *See, e.g.*, *Valore v. Islamic Repub. of Iran*, 700 F. Supp. 2d 52, 84 (D.D.C. 2010).  Courts vary above or below this amount depending on the extent of the injuries.  For example, victims who endured severe physical or psychological pain, such as losing limbs, vision, or hearing may receive between $7.5–12 million in damages. *See Mark*, 2022 WL 4103854, at *9.  Yet, victims suffering "severe emotional injury" but "relatively minor physical injuries" typically receive $1.5–3 million.  *Id.*

Then-Chief Judge Howell recently used an "objective metric"—Veterans Affairs disability ratings—to guide her in departing from the *Heiser* awards.  *See Schooley v. Islamic Repub. of Iran*, No. 17-cv-1376, 2019 WL 2717888, at *74–75 (D.D.C. June 27, 2019).  VA disability ratings are "a specialized agency's official determination regarding the extent of disabling injury sustained by service members in connection with military service."  *Id.* at 74 (cleaned up).  Because VA ratings roll mental and physical injuries into one number, they facilitate a more objective approach to awarding damages.  This is so because courts need not weigh whether certain injuries merit more money than others.  *See id.*

The *Schooley* rubric instructs that servicemembers rated up to 30% disabled receive the standard *Heiser* award of $5 million each; those rated between 40–60% disabled receive an upward departure to $6 million each; and those rated 70–100% disabled receive a further upward departure to $7 million each.  *See id.* at 75.  Of course, courts remain free to vary from these benchmarks to "ensure that individuals with similar injuries receive similar awards."  *Id.* at 74.

As for the family members of injured servicemembers, the standard amount of solatium damages depends on the nature of the relationship between the victim and the relative, and the severity of pain the relative suffers. *See Mark*, 2022 WL 4103854, at *10. If the victim dies, surviving spouses typically receive $8 million and children receive $5 million. *See Selig*, 573 F. Supp. 3d at 65. When a victim suffers a non-fatal injury—the case for most servicemember Plaintiffs here—courts generally award spouses $4 million and children $1.5 million on average. *See Moradi v. Islamic Repub. of Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015); *Spencer v. Islamic Repub. of Iran*, 71 F. Supp. 3d 23, 28 (D.D.C. 2014). Of course, none of these numbers is "set in stone." *Selig*, 573 F. Supp. 3d at 65. Thus, the Court may award greater amounts in cases with "aggravating circumstances" or lower amounts "where the relationship between the claimant and the decedent is more attenuated." *Id.*

### III.

The Court first analyzes the special master's compensatory damages recommendations for the soldier Plaintiffs before turning to their relatives. Finally, the Court addresses punitive damages, prejudgment interest, and fees. The Court adopts all of the special master's findings of fact and conclusions of law unless they conflict with the reasoning below. When the special master "has deviated from the damages framework that this Court has applied in previous cases," the Court rejects his conclusions and alters the awards appropriately. *Anderson v. Islamic Repub. of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012). The final damages awarded to each Plaintiff are contained in the table attached to the Order issued today.

### A.

For the 31 servicemember Plaintiffs, the master used the *Schooley* rubric. *See* Master Rep. at 10–12. Most have VA ratings greater than or equal to 70%. *See id.* at 12. To these

4

Plaintiffs—Cherry, Clements, Daniels, Farve, Fraser, Holt, Isabella, Johnson, C. Jurgersen, Leake, Lewis, Markell, McCallum, Miguel, Payne, Rivera, Roth, Sorensen, Spry, Stephens, Taylor, Ware, Watkins, Williams, and Williamson—the master awarded $7 million each.  *See id.*  Two servicemembers (Mayer and Walton) have VA ratings between 40–60%.  *See id.* at 13.  So the master awarded them $6 million each.  *See id.*  Finally, servicemember McNeeley has a VA rating less than or equal to 30%, and servicemember Moorhouse does not yet have a rating, but his injuries are substantial.  *See id.* at 13.  The master awarded them each the standard $5 million.  The Court agrees with all these awards.

For two servicemember Plaintiffs—both of whom have a VA rating of 100% disabled—the master varied upward from *Schooley*'s $7 million to over $14 million each.  *See id.* at 12 (suggesting $14,453,570 for Bruce and $14,354,622 for B. Jurgersen).  He submits that "their injuries are so extreme that additional compensation . . . is warranted."  *Id.*  And he factored in their projected medical costs, which exceed $2 million each.  *See id.*

Mindful of the need to standardize awards for Plaintiffs with similar injuries, the Court finds those awards excessive.  *Accord Borochov v. Islamic Repub. of Iran*, 589 F. Supp. 3d 15, 41 (D.D.C. 2022) ("In the interest of fairness . . . courts strive to maintain consistency of awards between plaintiffs in comparable situations." (cleaned up)).  Even awards at the high end of the *Heiser* framework seldom exceed $12 million.  *See, e.g.*, *Cabrera v. Islamic Repub. of Iran*, No. 19-cv-3835, 2022 WL 2817730, at *45–46 (D.D.C. July 19, 2022).  More, the Court intends its awards to be fully compensatory—they reflect both the injuries suffered and medical costs.

Still, the master persuasively contends that servicemembers Bruce and B. Jurgersen suffered injuries that deserve more than the usual $7 million for 100% disabled veterans.  *See* Master Rep. at 12.  Both men are amputees, suffered traumatic brain injuries, and lost

5

consciousness for extended periods of time. *See id.* And B. Jurgersen spent a month in intensive care, undergoing multiple facial and dental surgeries. *See id.*; *see also Roth*, 2023 WL 196577, at *10. The Court has noted that despite sustaining significant injuries, B. Jurgersen heroically redeployed to Iraq mere months later. *See id.* Both Plaintiffs will also face significant medical costs for the rest of their lives. *See* Master Rep. at 12 (quoting life care plans). Thus, in line with prior awards to similarly situated Plaintiffs, the Court will award Bruce and B. Jurgersen $9 million each. *See, e.g.*, *Mark*, 2022 WL 4103854, at *10 (awarding the same amount for similar head and facial injuries); *Barry v. Islamic Repub. of Iran*, 410 F. Supp. 3d 161, 182 (D.D.C. 2019) (same for extensive dental and facial surgeries, plus "ongoing physical injuries"); *Cabrera*, 2022 WL 2817730, at *45 (same for amputees with lengthy hospital stays). While no monetary award can make these soldiers whole, the Court finds that $9 million is fair compensation given their injuries and future medical costs.

## B.

The master also awarded solatium damages to the family members of servicemembers killed or injured in these attacks. *First*, the master awarded *Heiser*'s standard $5 million to each of the parents of servicemember Desens, who perished in an attack. *See* Master Rep. at 15. The Court agrees $5 million each is appropriate. *Accord Selig*, 573 F. Supp. 3d at 66. *Second,* the master awarded *Heiser*'s standard $5 million to V.G., the son of deceased servicemember Garcia. *See* Master Rep. at 15. Again, the Court agrees. *Accord Selig*, 573 F. Supp. 3d at 74.

*Third*, the master awarded M. Garcia, a widow, $9 million for the loss of her husband. *See* Master Rep. at 15. Recall that the standard award for widows under *Heiser* is $8 million. *See Selig*, 573 F. Supp. 3d at 73. Assessing all of the relevant factors, the Court does not find that a deviation from the standard amount is warranted. *Accord id.* While M. Garcia

6

undoubtedly experienced great challenges after her husband was killed—including depression, disordered eating, and early inducement of her baby, *see* Decl. of M. Garcia (Sealed), ECF No. 45-7—the Court is mindful of the need to standardize awards for similarly situated plaintiffs. And other courts have reasoned that "larger awards are typically reserved for cases with aggravating circumstances that appreciably worsen the surviving spouse's pain and suffering, such as cases involving torture or kidnaping[.]" *See, e.g.*, *Greenbaum v. Islamic Repub. of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006).  The Court will thus award M. Garcia the standard $8 million.

*Fourth*, the master awarded Plaintiffs D. Jurgersen, M. Cherry, L. Clements, B. Leake, A. Payne, S. Rivera, and C. Williamson—all spouses of injured servicemembers—the standard *Heiser* amounts of $4 million.  *See* Master Rep. at 15.  The Court concurs that those awards are appropriate.  And the Court also agrees that spouse R. Stephens is entitled to a slightly higher award of $5 million based on the particular anguish and effects she has suffered (including an inpatient stay in a mental health facility).  *See* Master Rep. at 15; *see also Braun v. Islamic Repub. of Iran*, 228 F. Supp. 3d 64, 85 (D.D.C. 2017) (explaining that award enhancement is appropriate when a claimant submits "medical proof of severe pain, grief, or suffering").

*Fifth*, and finally, the master awarded the injured servicemembers' 29 children $2.5 million each.  *See* Master Rep. at 15.  The weight of authority in this district instructs that the average award to children of injured servicemembers is $1.5 million each.  *See, e.g.*, *Mark*, 2022 WL 4103854, at *10; *Spencer v. Repub. of Iran*, 71 F. Supp. 3d 23, 28 (D.D.C. 2014). *Schooley*—on which the master relies for the servicemembers—agrees.  In awarding $1.5 million each to children suffering emotional injuries, *Schooley* explained that the "harm [they] suffered

. . . is consistent with that suffered by many children of victims of terrorism." 2019 WL 2717888, at *78.

So too here. The master has not explained why the awards to these children should exceed the standard $1.5 million, nor does the Court see any justification. When courts enhance family member awards above the typical amounts, they generally do so because of "evidence establishing an especially close relationship . . . medical proof of severe pain, grief, or suffering . . . and circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing." *Oveissi v. Islamic Repub. of Iran*, 768 F. Supp. 2d 16, 26–27 (D.D.C. 2011). While the Court in no way minimizes the children's suffering here, it does not find that an upward deviation is appropriate. Mindful of the goal to standardize awards for Plaintiffs with similar emotional injuries, the Court will award each of the 29 children of the wounded servicemembers $1.5 million. *Accord Schooley*, 2019 WL 2717888, at *78.

\* \* \*

In closing, the Court echoes what it has stated elsewhere in FSIA cases, that no one should experience the trauma that Plaintiffs and the decedents here undoubtedly experienced. In making these awards, the Court does not minimize or denigrate the pain and suffering each Plaintiff has endured. Nonetheless, the Court's duty is to seek to achieve some justice and consistency not only between Plaintiffs here, but in line with other awards that have been made to similarly injured plaintiffs in prior FSIA cases. *Accord Borochov*, 589 F. Supp. 3d at 48.

### C.

Plaintiffs also seek punitive damages, which help "punish outrageous behavior and deter [it] in the future." *Selig*, 573 F. Supp. 3d at 75. Four factors guide the decision to award punitive damages. *See id.* These are: (1) the character of defendant's acts, (2) the nature and

extent of harm to the plaintiffs that defendant caused or intended to cause, (3) the need for

deterrence, and (4) the wealth of the defendant. *See id.* These factors support an award of

punitive damages. Iran's terroristic acts were intended to—and did—cause severe pain and

suffering to Plaintiffs. More, "[t]here is need for deterrence because, time and again, courts in

this district have been confronted with families shattered by Iran-backed terrorists." *See id.*

As the special master recognized, "[t]here is no set formula for calculating punitive

damages." Master Rep. at 16. So he chose the multiplier approach from *Kaplan v. Hezbollah*,

213 F. Supp. 3d 27, 42 (D.D.C. 2016), awarding Plaintiffs $3.44 for each compensatory dollar,

*see* Master Rep. at 16–17. True, some courts in this district have adopted this approach. *See,*

*e.g.*, *Gill v. Islamic Repub. of Iran*, 249 F. Supp. 3d 88, 106 (D.D.C. 2017). But other courts—

including this one—have rejected it because it leads to punitive damages that far exceed

compensatory damages. *See, e.g.*, *Selig*, 473 F. Supp. 3d at 75–77; *Christie v. Islamic Repub. of*

*Iran*, No. 19-cv-1289, 2020 WL 3606273, at *28 (D.D.C. July 2, 2020); *Mark*, 2022 WL

4103854, at *18.

As this Court explained in *Selig*, awarding punitive damages equal to compensatory

damages "is commensurate with the character of [Iran's] [terroristic] acts and the nature and

extent of the harm caused." 573 F. Supp. 3d at 77. For the reasons discussed more fully in *Selig*,

the Court will award punitive damages equal to compensatory ones—$314,500,000 to be

apportioned among Plaintiffs according to their compensatory damages. *See* 573 F. Supp. 3d at

77. *Accord Borochov*, 589 F. Supp. 3d at 49; *Mark*, 2022 WL 4103854, at *18.

## D.

The Court next considers prejudgment interest and fees. The special master awarded

Plaintiffs prejudgment interest, *see* Master Rep. at 18–19; *see also* Ex. 126, even though they did

not request it, *see* Third Am. Compl. (Compl.) at 61–62.  While the Court has discretion to award prejudgment interest "the overarching tide of persuasive precedent . . . plainly weighs against" it. *Selig*, 573 F. Supp. 3d at 77.  This is because "[w]hen an award without pre-judgment interest fully compensates a plaintiff, an award of pre-judgment interest no longer has the intended compensatory purpose and should be denied."  *Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F. Supp. 2d 120, 135 (D.D.C. 2005).  *Accord Selig*, 573 F. Supp. 3d at 77–78; *Borochov*, 589 F. Supp. 3d at 50.  The Court has evaluated the pain and suffering of all Plaintiffs and its awards are intended to be fully compensatory.  So it declines to award prejudgment interest.

Finally, Plaintiffs seek attorneys' fees and reimbursement for generic "costs and expenses."  Compl. at 62.  Plaintiffs cite no basis for the award of these fees.  *See Kinyua v. Republic of Sudan*, 466 F. Supp. 3d 1, 13 (D.D.C. 2020) ("[T]he Court is not aware of any statutory or other basis for the award of attorney's fees[.]").  More, "plaintiffs have not provided any information regarding the fees and costs sought."  *Selig*, 573 F. Supp. 3d at 78 (denying plaintiffs' request for costs and expenses because "plaintiffs have not provided any information regarding the fees and costs sought").  The Court therefore declines to award any fees or expenses.

### IV.

For these reasons, the Court will adopt in part and modify in part the special master's damages recommendations.  A separate Order will issue today.


Dated: May 2, 2023                              _____
                                                TREVOR N. McFADDEN, U.S.D.J.